## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARYLAND CASUALTY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GRIGOLI ENTERPRISES INC. d/b/a | ) |
| DOMINICK'S PIZZA, | ) |
| DOMINICK GRIGOLI, | ) |
| JARED JOSEPH THOMPSON, | )   Civil Action No. 12-1290-RGA-SRF |
| MELISSA RIVERA-PENA, INDIVIDUALLY | ) |
| AND AS ADMINISTRATRIX OF THE ESTATE | ) |
| OF CIDAMARIE BROWN, DECEASED, | ) |
| AND GUARDIAN AD LITEM FOR M.W., | ) |
| HER MINOR CHILD, AND | ) |
| DAMAR BROWN, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

The Plaintiff, Maryland Casualty Company ("Maryland Casualty"), filed this declaratory

judgment action on October 5, 2012, against Defendants Grigoli Enterprises, Inc. ("Dominick's

Pizza"), Dominick Grigoli ("Mr. Grigoli"), Jared Joseph Thompson ("Thompson"), Melissa

Rivera-Pena ("Rivera-Pena"), and Damar Brown ("Mr. Brown"). (D.I. 1) This action arises from

two civil lawsuits filed individually by Rivera-Pena and Mr. Brown in the Superior Court of

Delaware (the "Underlying Complaints"),[1] seeking damages in connection with a motor vehicle

accident that occurred on June 8, 2010 (the "Accident"). (*See id.*, Exs. B, C) Maryland Casualty

seeks a declaration from this court that it has no obligation to defend or indemnify Dominick's

---

[1] *See* Melissa Rivera-Pena, Adminstratrix of the Estate of Cidamarie Brown, Deceased, Guardian
Ad Litem for M.W., Her Minor Child, and Individually v. Jared J. Thompson, Charles L.
Thompson, Dominick's Pizza and Dominick Grigoli, No. N11C-09-034 JRS;

Damar Brown v. Jared Joseph Thompson, Charles L. Thompson, Dominick Grigoli, and
Dominick's Pizza, No. N12C-02-236 JRS.

1

Pizza, Mr. Grigoli, or Thompson for any claims asserted against them in the Underlying Complaints.

Pending before the court are cross-motions for summary judgment filed by Maryland Casualty (D.I. 25) and Rivera-Pena (D.I. 22). Thompson filed a notice of joinder in the motion of co-defendant Rivera-Pena. (D.I. 28) The court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).[2] For the reasons that follow, I recommend that Maryland Casualty's motion be GRANTED, and the cross-motion of Rivera-Pena and Thompson be DENIED.

## II.   BACKGROUND

### A. The Accident

The Underlying Complaints allege generally that on June 8, 2010, while Thompson was driving a 1994 Chrysler Town & Country minivan along Pleasant Valley Road in Newark, Delaware, he struck two minor children. (D.I. 1, Exs. B, C) The minivan was owned and entrusted to Thompson by his father, Charles L. Thompson. (*Id.*) Thompson was operating the minivan in the course and scope of his employment as a pizza delivery driver for Dominick's Pizza. (*Id.*) One of the minor children, Cidamarie Brown, died the next day as a result of the injuries she sustained, while the second minor child sustained unspecified bodily injuries, pain and suffering, mental distress, and other damages. (*Id.*) Rivera-Pena is the mother of the two minors, and Mr. Brown is the father of Cidamarie Brown. (*Id.*)

The Underlying Complaints assert, *inter alia*, that Thompson was negligent and/or reckless in operating his vehicle. (*See id.*) The Underlying Complaints also allege that Defendants Dominick's Pizza and Mr. Grigoli are vicariously liable under the doctrine of *respondeat superior* for Thompson's alleged negligent and reckless conduct. (*Id.*)

---

[2] Plaintiff Maryland Casualty is a Maryland corporation with its principal place of business located in Illinois. (D.I. 1 at 2) All Defendants are Delaware corporations or residents. (*Id.*)

2

Furthermore, the Underlying Complaints allege that Dominick's Pizza and Mr. Grigoli

were independently negligent and reckless because they:

(1) failed to perform a proper background check on Thompson;
(2) improperly hired Thompson as a delivery driver despite his history of moving violations;
(3) failed to properly train, monitor, and supervise Thompson;
(4) entrusted delivery duties to Thompson even though they should have known that he was an unsafe driving risk; and
(5) entrusted delivery duties to Thompson knowing he could act negligently, carelessly and/or recklessly in a manner that would cause injury to another person.

(*Id.*)

## B. The Insurance Policy

Maryland Casualty is an insurance company that issued a Precision Portfolio Insurance

Policy, number PPS 43182972 (the "Policy"), with limits of $1,000,000 for each Occurrence and

$2,000,000 General Aggregate to its named insured, Dominick's Pizza. (D.I. 1 at 4) The Policy

is a package policy that contains both a Commercial Property Coverage Part and a Commercial

General Liability Coverage Part. (*Id.*) The Policy period began on March 24, 2008, and the

parties do not dispute that the Policy was in effect at the time of the Accident. (*See id.*)

The Policy provides, in relevant part:

1.      Insuring Agreement

      a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

      b.     This insurance applies to "bodily injury" and "property damage" only if:

3

> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> >
> > (2) The "bodily injury" or "property damage" occurs during the policy period.
>
> c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury". [sic]

(*Id.*, Ex. A § I, Coverage A, subsections (1)(a)-(c))

> The Policy also includes the following "auto exclusion," which states that "[t]his insurance does not apply to":
>
> > g. Aircraft, Auto Or Watercraft:
> >
> > "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading". [sic]

(*Id.*, Ex. A § I(2)(g))

> The Policy provides that the following qualify as insureds:
>
> > a. Your "employees", [sic] other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

(*Id.*, Ex. A § II) Additionally, the Policy sets forth the following relevant definitions:

> > 2. "Auto" means a land motor vehicle, trailer or semitrailer designated for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."
> >
> > 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, or death resulting from bodily injury, sickness or disease.

(*Id.*, Ex. A § V)

4

## III.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

5

## IV. DISCUSSION

A federal court sitting in diversity is "required to apply the substantive law of the state whose laws govern the action." *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990). The parties agree that Delaware law governs the pending action. (*See* D.I. 22 at 2-4; D.I. 26 at 2)

Delaware law treats the construction of an insurance contract as a question of law. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 40 (Del. 1991). "Because an insurance policy is an adhesion contract and is not generally the result of arms-length negotiation, courts have developed rules of construction which differ from those applied to most other contracts." *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982). The court must read the insurance contract as a whole, give effect to all provisions therein, and interpret the terms in a common sense manner. *See JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011); *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1149, 1151 (Del. 1997).

When the language of an insurance contract is ambiguous, the court should construe the contract in favor of the insured because the "insurer or the issuer, as the case may be, is the entity in control of the process of articulating the terms." *Oglesby*, 695 A.2d at 1149-50; *see also Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1062 (Del. 2010); *Hallowell*, 443 A.2d at 926. "An insurance contract is ambiguous when the provisions in controversy are reasonably or fairly susceptible to two different interpretations or may have two or more different meanings." *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001). However, when the language is clear and unequivocal, the parties are bound by its plain meaning. *Hallowell*, 443 A.2d at 926 ("[I]f the language is clear and unambiguous a Delaware court will not destroy or twist the words under the guise of construing them."); *Laird v. Emp'rs Liab. Assur. Corp.*, 18 A.2d 861, 862 (Del. Super. Ct. 1941) ("[T]he courts cannot change or ignore the language of a contract merely

6

to avoid hardships or to meet special circumstances against which the parties have not protected themselves.").

The insured bears the burden of proving that a claim is covered by an insurance policy. *See New Castle County v. Hartford Accident and Indem. Co.*, 933 F.2d 1162, 1181 (3d Cir. 1991); *Morris James LLP v. Cont'l Cas. Co.*, 928 F. Supp. 2d 816, 821-822 (D. Del. 2013).

Under Delaware law, an insurer has a duty to defend the insured if the allegations in the underlying complaint fall within the terms of the insurance policy.[3] *See Continental Cas. Co. v. Alexis I. DuPont Sch. Dist.*, 317 A.2d 101, 103 (Del. 1974). The test is whether the underlying complaint, read as a whole, alleges a risk within the coverage of the policy. *See id.* at 105. The Delaware Supreme Court has articulated the following principles to be applied when performing this analysis:

(1) when there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured;
(2) any ambiguity in the pleadings should be resolved in favor of the insured;
(3) if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises.

*Id.* Thus, in Delaware, an insurer's duty to defend its insured arises when the allegations of the underlying complaint show a potential that liability within coverage will be established. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rhone-Poulenc Basic Chems. Co.*, 1992 WL 22690, at \*7 (Del. Super. Ct. Jan. 16, 1992). *See also Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 525-26 (D. Del. 2001)

On the other hand, even where coverage is established, an insurer will be excused from its duty to defend if, as a matter of law, policy exclusions or exemptions apply. *See Brosnahan*

___

[3] It is well settled that an insurer's duty to defend is broader than its duty to indemnify. *See Charles E. Brohawn & Bros. v. Employers Commercial Union Ins. Co.*, 409 A.2d 1055, 1058 (Del. 1979).

7

*Builders*, 137 F. Supp. 2d at 526; *Rhone-Poulenc, 1992 WL 22690*, at \*8; *State Farm Fire & Cas. Co. v. Hackendorn*, 605 A.2d 3, 7 (Del. Super. Ct. 1991). The burden is on the insurer to establish that policy exclusions apply in a particular case, and that they are subject to no other reasonable interpretation. *See Brosnahan Builders*, 137 F. Supp. 2d at 526; *Deakyne v. Selective Ins. Co. of America*, 728 A.2d 569, 571 (Del. Super. Ct. 1997).

## A. Maryland Casualty's Duty to Defend or Indemnify Thompson

Maryland Casualty contends that it has no duty to defend or indemnify Thompson in connection with the claims asserted against him in the Underlying Complaints. (D.I. 26 at 10) Specifically, Maryland Casualty argues that even though Thompson qualifies as an insured under the Policy (as an employee of the named insured), the Policy's auto exclusion precludes coverage because the claims against him arose out of his use of an automobile. (*Id.* at 10-11)

Thompson filed a notice of joinder in Rivera-Pena's motion (*see* D.I. 28), despite the fact that the motion presents no argument that coverage should be provided for his alleged negligence and/or recklessness in the operation of his vehicle. Thompson cites no legal authority, nor does he assert any factual or legal basis for a defense or indemnity under the Policy in connection with the claims asserted against him in the Underlying Complaints. Consequently, Thompson has not refuted Maryland Casualty's position denying him a defense and coverage.

Summary judgment should be granted in favor of Maryland Casualty. The Underlying Complaints assert that the death of Cidamarie Brown, and the alleged injuries to M.W., Rivera-Pena, and Mr. Brown were caused by an impact with an automobile operated by Thompson. (*See generally* D.I. 1, Exs. B and C) The auto exclusion in the Policy disclaims coverage for any bodily injury "arising out of the . . . use . . . of any . . . 'auto' . . . owned or operated by . . . any insured." (*Id.*, Ex. A § I(2)(g)) The claims asserted against Thompson in the Underlying

8

Complaints clearly arose out of Thompson's use of an automobile. Indeed, the Supreme Court of Delaware has explained that "[t]he term 'arising out of' is one that lends itself to uncomplicated, common understanding." *Eon Labs Mfg. v. Reliance Ins. Co.*, 756 A.2d 889, 893 (Del. 2000). *See also Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1257 n.42 (Del. 2008) (explaining that arising out of "must be broadly construed to mean 'originating from,' 'growing out of,' or 'flowing from[]'" (citation omitted)). Consequently, the Policy's auto exclusion applies to preclude coverage for the claims asserted against Thompson.

## B. Maryland Casualty's Duty to Defend or Indemnify Dominick's Pizza and Mr. Grigoli for Claims of Vicarious Liability

The Underlying Complaints allege that Dominick's Pizza and Mr. Grigoli are vicariously liable, under the doctrine of *respondeat superior*, for Thompson's alleged negligent and reckless conduct because Thompson was acting in the course of his employment at the time of the Accident.

Maryland Casualty contends that it has no duty to defend or indemnify Dominick's Pizza and Mr. Grigoli for the claims of vicarious liability asserted against them because coverage is precluded under the Policy's auto exclusion.[4]

Maryland Casualty's motion for summary judgment should be granted. The Policy's auto exclusion precludes coverage for claims of bodily injury that arise out of the use of any automobile operated by any insured. (*See* D.I. 1, Ex. A § I(2)(g)) The claims of vicarious liability asserted against Dominick's Pizza and Mr. Grigoli are based exclusively on the facts underlying the claims asserted against Thompson. Thus, the Policy's auto exclusion applies to preclude

---

[4] Dominick's Pizza and Mr. Grigoli did not respond to Maryland Casualty's motion for summary judgment.

coverage for claims based upon *respondeat superior* for the same reasons discussed in the preceding section.

## C. Maryland Casualty's Duty to Defend or Indemnify Dominick's Pizza and Mr. Grigoli for Claims of Negligent Hiring, Training, and Supervision

Maryland Casualty argues that it has no duty to defend or indemnify Dominick's Pizza and Mr. Grigoli for the claims of negligent hiring, training, and supervision because the claims are "fundamentally premised" upon the Accident itself and, as such, the Policy's auto exclusion is triggered and precludes coverage. (D.I. 26 at 13, 14, 17)

Rivera-Pena counters that the Policy covers her claims of negligent hiring, training, and supervision because the Policy's auto exclusion does not expressly mention such claims. (D.I. 22 at 4) According to Rivera-Pena, "[i]n the absence of such language, the policy is ambiguous and should be construed against the insurer." (*Id.*)

Delaware Courts have not yet had occasion to address whether an auto exclusion in a commercial general liability insurance policy precludes coverage for claims of negligent hiring, training, and supervision asserted against a company whose employee allegedly causes a motor-vehicle accident.[5] There are, however, a number of analogous decisions that provide guidance on this issue.

In one line of cases, Delaware courts have considered claims of negligent entrustment in the context of auto exclusions in insurance policies. For example, in *Insurance Co. of North America v. Waterhouse*, 424 A.2d 675 (Del. Super. Ct. 1980), the Superior Court of Delaware considered the issue of

---

[5] "In the absence of controlling authority by the [Delaware] Supreme Court, we must predict how it would rule if faced with the issue." *Lomando v. United States*, 667 F.3d 363, 385 (3d Cir. 2011) (citing *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010)).

> whether an insurer, under a homeowner's policy of insurance, is required to provide a defense and coverage to an insured who is sued for alleged negligent entrustment of an automobile, in the face of a stated policy exception which excludes coverage for bodily injury claims arising out of the use of motor vehicles ow[n]ed by the insured.[6]

*Id.* at 680. The insurance company had argued that, "regardless of the nature of the tort liability asserted against [the insured], if the incident which gave rise to liability emanated from the ownership or operation of a motor vehicle, coverage is excluded." *Id.* On the other hand, the insured contended "that the negligent entrustment claim involves a judgmental tort, with the chattel involved merely an incidental circumstance of the tortious conduct." *Id.*

In holding that the policy exclusion precluded coverage for the negligent entrustment claim, the *Waterhouse* Court reasoned:

> Admittedly, the tort of negligent entrustment involves conduct which, in part, is distinct from the operation of the instrumentality which inflicts the harm. It is the negligent entrusting which creates the unreasonable risk, although the magnitude of the harm may depend upon the dangerous character of the product entrusted. It is not difficult to envision situations in which the type of instrumentality entrusted, (e.g., a gun or explosives), squares with the insurer's obligation to defend claims asserted against a parent-entrustor under a policy of general liability. But where the parties to a policy of general risk insurance agree to the specific exclusion of an instrumentality which, in operation and usage, is the predominant source of public liability claims, the focus changes. *Regardless of when and where the judgment is made to entrust the automobile, the essential triggering element giving rise to the tort is the use of the chosen instrumentality the automobile.* It is this use which is specifically proscribed and, in the normal expectation of the parties to the insuring agreement, separately insured. While it is laudable to attempt an expansive reading of the policy in an effort to provide the insured with maximum coverage, the clear language of the exclusion cannot be tortured to achieve that result.

*Id.* at 682 (emphasis added) (citation omitted). *See also Snow v. Home Ins. Co.*, 1982 Del. Super. LEXIS 977, at *1-2 (Del. Super. Ct. Jan. 25, 1982) (considering the same issue addressed in *Waterhouse*, and holding that under a "substantially identical" auto exclusion, the insurance

---

[6] Specifically, the policy did "not apply . . . to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned or operated by, or rented or loaned to any Insured." *Waterhouse*, 424 A.2d at 682.

company was "not required under the [homeowners policy] to provide a defense and coverage to the insured plaintiffs for their alleged negligent entrustment of a motor vehicle owned by them").

Similarly, in *Scottsdale Indem. Co. v. Lloyd*, 2005 WL 516852 (Del. Super. Ct. Mar. 4, 2005), the Court considered whether a commercial general liability policy issued to a company ("Key Box") provided coverage where an owner of Key Box loaned his personal vehicle to a Key Box employee, who was later involved in an automobile accident which caused the employee's death and the death and injuries of several passengers in another vehicle. *Id.* at *1. The passengers in the second vehicle sued Key Box, claiming, *inter alia*, that the owner was negligent and reckless in entrusting his vehicle to the employee and that Key Box was liable under the doctrines of agency and *respondeat superior*. *Id.* Thereafter, the insurance company for Key Box filed a declaratory judgment action and motion for summary judgment, arguing that the auto exclusion in the applicable insurance policy precluded coverage for all insureds. *Id.*

The Court granted the insurance company's motion for summary judgment, citing *Waterhouse* and *Snow* for the principle that "Delaware courts have established that an automobile exclusion contained in a liability policy may validly preclude coverage for damages arising out of an automobile accident." *Id.* at *3. The auto exclusion in Key Box's policy disclaimed coverage "for any 'bodily injury' or 'property damage' arising out of the 'ownership, maintenance, use or entrustment to others of an 'auto' owned, operated by, or rented or loaned to any insured.'" *Id.* at *1. Consequently, the Court held that the policy "unambiguously excluded coverage" for the passengers' claims, which arose out of the automobile accident. *Id.* at *3.

In a second line of cases, Delaware courts have considered claims of negligent hiring, training, and supervision in the context of liquor liability and assault and battery exclusions in insurance policies.

12

In *Terra Nova Ins. Co. v. Nanticoke Pines, Ltd.*, 743 F. Supp. 293 (D. Del. 1990), a bar patron had sustained injuries when he was shot outside a tavern by a security officer employed by the bar. *Id.* at 294. The bar patron alleged, among other things, that the tavern had been negligent in hiring the security guard, in supervising him, in failing to prevent or stop the incident from occurring, and in serving alcohol to its security officer. *Id.* This court, applying Delaware law, held that an assault and battery exclusion contained in the applicable insurance policy[7] barred the injured patron's claim because the various claims of negligence asserted against the tavern were based on negligence "that helped make the assault possible, and [were] thus *fundamentally premised* on the assault itself." *Id.* at 297 (emphasis added). Consequently, the court granted the insurance company's motion for summary judgment, holding that coverage was precluded for the negligence claims. *Id.* at 298.

Similarly, in *Regis Ins. Co. v. Cosenza*, 2001 WL 238150 (Del. Super. Ct. Jan. 31, 2001), a bar patron alleged that other patrons at a tavern had assaulted him on the property, and that the tavern was negligent by, *inter alia*, failing to "provide adequate security" and "properly control patrons who were known to harass, intimidate and assault other patrons." *Id.* at *1. The *Cosenza* Court granted the insurance company's motion for summary judgment, explicitly adopting this court's reasoning in *Terra Nova. Id.* at *3. The Court held that the assault and battery exclusion[8]

---

[7] The exclusion in *Terra Nova* provided: "It is agreed that no coverage shall apply under this policy for any claim, demand or suit based on Assault and Battery, and Assault and Battery shall not be deemed an accident, whether or not commited [sic] by or at the direction of the insured." *Terra Nova*, 743 F. Supp. at 297.

[8] The exclusion in *Cosenza* provided:

> [Regis Insurance Company] has no duty to defend or to indemnify an insured in any action or proceeding alleging . . . [a]ssault and [b]attery or any act or omission in connection with the prevention, suppression or results of such acts; or . . . [h]armful or offensive contact between or among two or more persons; or . . . [t]hreats by word or deeds.

*Cosenza*, 2001 WL 238150, at *1.

13

in the relevant insurance policy precluded coverage for the various claims of negligence asserted by the bar patron against the tavern, because the alleged negligent actions were "based upon conduct 'that helped make the assault possible, and [were] thus fundamentally premised on the assault itself.'" *Id.* at \*3 (quoting *Terra Nova*, 743 F. Supp. at 297).

Finally, in *Scottsdale Ins. Co. v. Lankford*, 2007 WL 4150212 (Del. Super. Ct. Nov. 21, 2007), *aff'd*, 2008 WL 1779218 (Del. Apr. 21, 2008), a tavern's staff served one of its bouncers shots of alcohol while he worked. *Id.* at \*2. Later, the intoxicated bouncer left the tavern and drove his car into oncoming traffic, causing his death and the deaths and injuries of several passengers in another vehicle. *Id.* The passengers in the second vehicle sued the tavern, asserting claims of negligent hiring, supervision, and control. *Id.* at \*3. The insurance company for the tavern then filed the declaratory judgment action.

The applicable insurance policy contained a "Liquor Liability Exclusion," which disclaimed coverage for bodily injury "'for which any insured may be held liable by reason of: (1) Causing or contributing to the intoxication of any person; [or] (2) The furnishing of alcoholic beverages to a person . . . under the influence of alcohol.'" *Id.* at \*2. The parties agreed that the Liquor Liability Exclusion precluded coverage for the claim that the tavern's staff "improperly caused [the bouncer] to become intoxicated and then [caused] the motor vehicle collision." *Id.* at \*3 (alteration in original). Thus, the relevant issue was "whether claims of negligent hiring and supervision of an employee (and other like claims), which [were] alleged to have continued after the negligent causation of the employee's intoxication, [were] separate from claims based on causing or contributing to a person's intoxication." *Id.* at \*4.

The Court granted the insurance company's motion for summary judgment, holding that the various claims of negligence against the tavern, "unavoidably based on injuries caused by an

14

intoxicated employee, [were] precluded by the 'Liquor Liability Exclusion' because such claims [were] 'fundamentally premised' on a claim that [was] itself excluded by the terms of the policy; namely, the negligent furnishing of alcohol to an employee." *Id.*

> The Court reasoned that it could not
>
> lose sight of the plain meaning of the language in the insurance policy by the [defendants'] resourcefulness in their artful pleadings. The purpose of Delaware's "fundamentally premised" analysis is to prevent an injured party from circumventing the clear terms of an insurance policy by allying with the insured and by fashioning expansive theories of liability. While this Court recognizes[] . . . "the horrible loss suffered here, [this Court is] not at liberty to extend insurance coverage beyond that provided by the unambiguous language in the Policy."

*Id.* at *8 (alteration in original) (citation omitted).

Based on the foregoing legal authority, the Delaware Supreme Court would likely find that the auto exclusion in the present case precludes coverage for claims of negligent hiring, training, and supervision asserted against a company whose employee causes a motor-vehicle accident.

Furthermore, the court is not persuaded by Rivera-Pena's argument that the Policy is ambiguous because it "does not specifically mention any type of exclusion for claims regarding negligent hiring, training and/or supervision." (D.I. 22 at 4) Rivera-Pena cites no legal authority in support of her position. Moreover, no court applying the "fundamentally premised" analysis under Delaware law has found ambiguity in policy exclusions that are identical or substantially similar to the exclusion in issue here. *See, e.g., Scottsdale Indem. Co. v. Lloyd,* 2005 WL 516852, at *3; *Snow,* 1982 Del. Super. LEXIS 977, at *1-2; *Waterhouse,* 424 A.2d at 682. Likewise, in *Terra Nova, Cosenza,* and *Lankford,* the respective policy exclusions were found to preclude claims of negligent hiring, training, and/or supervision, despite the absence of such express language in the exclusions.

15

Consequently, summary judgment should be granted in favor of Maryland Casualty because the claims of negligent hiring, training, and supervision are fundamentally premised on a claim that is itself excluded by the terms of the Policy, namely, the negligent and/or reckless operation of an automobile by Thompson, resulting in the Accident.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant Maryland Casualty's motion for summary judgment and deny Rivera-Pena and Thompsons' motion for summary judgment.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 13 , 2014

Sherry R. Fallon
United States Magistrate Judge

16